# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| COURTLAND DAVANTE' WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:18-cv-00665-ACL |
| | ) |
| R. SAVAGE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Courtland DaVante' Williams for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2; Docket No. 8). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $4.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's amended complaint without prejudice.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's

account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of the instant motion, plaintiff submitted an affidavit and an updated certified inmate account statement. (Docket No. 9). The certified inmate account statement shows an average monthly deposit of $20.00. The Court will therefore assess an initial partial filing fee of $4.00, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but "does not accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit

of a liberal construction. *Haines v. Kerner,* 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**Background**

Plaintiff is currently an inmate at Crossroads Correctional Center. At all times relevant to the amended complaint, plaintiff was incarcerated at Potosi Correctional Center in Mineral Point, Missouri. He has filed this action pursuant to 42 U.S.C. § 1983. Plaintiff's amended complaint names the following defendants: R. Savage; Unknown Lee; Unknown Weaver; Unknown Klein; Unknown Brasser; Unknown Beech; Cindy Griffith; Alan Earls; and Tory Burch. All defendants are employed by the Potosi Correctional Center and are sued in their individual and official capacities.

On April 26, 2018, plaintiff filed his original complaint, naming the above-listed defendants and asserting a claim of failure to protect. (Docket No. 1). He also filed a motion for leave to proceed in forma pauperis (Docket No. 2) and a motion to appoint counsel (Docket No. 3). Plaintiff filed an amended complaint with the Court on May 25, 2018. (Docket No. 7). The

amended complaint consists of a Court-provided civil rights complaint form, along with copies of plaintiff's grievances and grievance responses.[1] He also filed new motions to proceed in forma pauperis (Docket No. 8) and to appoint counsel (Docket No. 10). "It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005). *See also In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). Accordingly, the Court will look at plaintiff's amended complaint for purposes of initial review.

**Amended Complaint**

On October 3, 2016, plaintiff states that he was at Potosi Correctional Center awaiting transfer to another institution. (Docket No. 7 at 16). While handcuffed to the restraint bench, he alleges that he was assaulted by another offender. This offender is not named in the amended complaint. Subsequently, plaintiff received a notice stating that his transfer from Potosi Correctional Center had been withdrawn. Plaintiff believes his transfer was withdrawn due to the incident on October 3, 2016. He alleges that Warden Griffith, Zone Director Earls, and Functional Unit Manager Burch knew of a substantial risk to his safety following this incident, but failed to address this to the Central Transfer Authority.

On May 18, 2017, plaintiff was removed from his cell to attend an Ad-Seg Committee Hearing. Afterwards, Functional Unit Manager Burch informed him that he was being moved to "2B" for a couple weeks because Burch did not like his attitude. He was placed in "2B-Cell 5" that day.

On May 19, 2017, plaintiff was escorted to the shower between 1:00 a.m. and 1:45 a.m. He was escorted by Officer Beech. Officer Klein was in front of him, escorting another offender

---

[1] The Court will treat the attachments to plaintiff amended complaint as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

named Matthew Smith. (Docket No. 7 at 18). Near the entryway of B-Wing, someone yelled "Watch out!" (Docket No. 7 at 16, 18). Plaintiff turned his head and saw an offender named Randy Teter running towards him. (Docket No. 7 at 18). He ducked to avoid being hit in the face, at which point he was cut and stabbed on his left shoulder and left upper back. He states he had to "jerk free" of Officer Beech, who was holding him in place, and ran away to avoid being cut or stabbed again. Plaintiff states that Officer Beech did not deploy mace during the assault. Nevertheless, Teter was subdued and plaintiff was escorted back to his cell by Officer Weaver.

According to plaintiff, Teter was able to attack him because he had been able "pop" open his shower. Plaintiff alleges that Officer Lee failed to abide by security measures, and was upstairs taking another offender to the shower when the attack occurred. He also claims that Officer Lee knew the shower Teter was using had a malfunction in which it could be popped open. (Docket No. 7 at 17). Plaintiff alleges that Officers Weaver and Brasser are responsible because of a lack of awareness. He claims that Officer Beech is responsible for failing to take proper measures in restraining Teter. Plaintiff also asserts that Officer Savage, the grievance officer, refused to send him a copy of his I.R.R. response, and refused to provide him with the first names of the officers involved. (Docket 7-1 at 1).

As a result of this incident, plaintiff allegedly suffered two cuts and two stabs. He was taken to medical where he received bacitracin ointment and Band-Aids. (Docket No. 7 at 5). He is requesting $290,000 in damages against all defendants. (Docket No. 7 at 6).

## Discussion

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 after having allegedly been assaulted by an inmate at Potosi Correctional Center. He states that defendants are liable for having failed to protect him. He names as defendants Officer R. Savage, Officer Unknown Lee,

5

Officer Unknown Weaver, Officer Unknown Klein, Officer Unknown Brasser, Officer Unknown Beech, Warden Cindy Griffin, Zone Director Alan Earls, and Functional Unit Manager Tory Burch. Defendants are sued in both their official and individual capacities. Having carefully reviewed and liberally construed plaintiff's allegations, and for the reasons discussed below, the Court must dismiss plaintiff's claims pursuant to § 1915(e)(2)(B).

### A. Plaintiff's Official Capacity Claims

Plaintiff's official capacity claims against defendants must be dismissed for failure to state a claim. A suit brought against a state official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). In other words, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). *See also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"); and *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official…capacities sues only the public employer"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will*, 491 U.S. at 71. *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983"). Moreover, in the absence of a waiver, the Eleventh Amendment[2] bars suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998).

Plaintiff alleges that all the named defendants are employed at the Potosi Correctional

---

[2] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI.

Center in Mineral Point, Missouri. The Potosi Correctional Center is part of the Missouri Department of Corrections, which is a state agency of the State of Missouri. As noted above, plaintiff's official capacity claim against each individual defendant is really a claim against that defendant's employer. Accordingly, plaintiff's official capacity claims are actually claims against the State of Missouri. Such claims are barred because a state is not a "person" for purposes of § 1983, and because the Eleventh Amendment bars suits against state officials acting in their official capacity.

Even if plaintiff's claims were not barred, he has still failed to allege any facts to support official-capacity liability. In order for § 1983 liability to attach to a governmental entity in an official capacity suit, the plaintiff must show that the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). Thus, there are three ways in which a plaintiff can establish liability in an official capacity suit.

First, a plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390.

Alternatively, a plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, the plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, a plaintiff can prove the liability of a governmental entity by establishing a deliberately indifferent failure to train or supervise. To do so, the plaintiff must demonstrate a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff's amended complaint contains no factual assertions regarding an unconstitutional policy, custom, or deliberately indifferent failure to train or supervise. Such allegations are necessary in order to state an official capacity claim. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of municipal liability claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Accordingly, for the reasons discussed above, plaintiff's official capacity claims against defendants must be dismissed.

**B. Defendant Savage**

Plaintiff's claims against defendant Savage in his individual capacity must be dismissed. An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (1996). As such, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). A prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531 (8th Cir. 1993) (unpublished opinion) (stating that the failures of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

Plaintiff alleges that defendant Savage refused to send him a copy of plaintiff's I.R.R. response, which plaintiff states he never received in the first place. Further, plaintiff states that Officer Savage refused to divulge the first names of the correctional officers in plaintiff's incident report. As noted above, a prison's grievance procedure does not provide plaintiff with a substantive right. Even if Officer Savage failed to properly process or respond to plaintiff's grievance requests, such a failure does not state a constitutional violation. Accordingly, plaintiff's claims against defendant Savage must be dismissed.

**C. Defendants Lee, Weaver, Klein, Brasser, Beech, Griffin, Earls, and Burch**

Plaintiff's claims against defendants Lee, Weaver, Klein, Brasser, Beech, Griffin, Earls, and Burch in their individual capacities must be dismissed.

Being subjected to assault is not part of the penalty that criminal offenders must pay for their offenses. *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007). As such, prison inmates have a clearly established Eighth Amendment right to be protected from violence by other inmates. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). Prison officials must take reasonable measures to guarantee inmate safety and to protect prisoners from violence at the hands of other prisoners. *Berry v. Sherman*, 365 F.3d 631, 633-34 (8th Cir. 2004). However, not every injury suffered by one prisoner at the hands of another prisoner translates into constitutional liability. *Whitson v. Stone Cty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010). "Rather, prison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018).

To prove an Eighth Amendment violation, an inmate must fulfill two requirements, one objective and one subjective. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). The first requirement is that, viewed objectively, the alleged deprivation of rights is sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective inquiry, and requires that the prisoner prove that the prison official had a "sufficiently culpable state of mind." *Id*. "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007).

i. **Defendant Griffin**

Plaintiff alleges that defendant Griffin was the warden of Potosi Correctional Center. (Docket No. 7 at 3). He states that Warden Griffin was aware of an assault that took place against

him on October 3, 2016. (Docket No. 7 at 16). He also claims that Warden Griffin knew of a substantial risk to his safety following this incident, and failed to address this to the Central Transfer Authority.

A warden may not be held liable under § 1983 for the constitutional violations of a subordinate on the basis of respondeat superior. *Lenz*, 490 F.3d at 995. However, a warden may be held responsible "if she was deliberately indifferent or tacitly authorized the offending acts." *Riley v. Olk-Long*, 282 F.3d 592, 596 (8th Cir. 2002).

In this case, plaintiff has not made any allegations that defendant Griffin was deliberately indifferent to his safety. His chief complaint seems to be that he was not transferred to another institution following the October assault, yet he does not demonstrate how this incident put him at risk for the later assault by inmate Teter. Even if Griffin was aware that plaintiff had been assaulted in October 2016, it does not necessarily follow that plaintiff was at a substantial risk of serious harm. Indeed, plaintiff's allegations show that the October 2016 incident involved a different inmate, and occurred approximately seven months before plaintiff was allegedly assaulted by inmate Teter. In other words, plaintiff does not make any showing that the second assault was related in any way to the first, or that the first assault put him at greater risk for a second.

Plaintiff's statement of claim does not contain any facts alleging Warden Griffin's awareness of a risk to his safety, whether from Teter or another inmate, and does not assert that Warden Griffin disregarded any such risk. For example, there are no allegations that plaintiff felt threatened by Teter, or that he requested to remain separate from Teter, or that Warden Griffin knew that Teter posed a danger to plaintiff. Furthermore, he does not establish that the situation at Potosi warranted him being transferred following the October assault.

11

In order to state a claim for failure to protect, plaintiff must show that Warden Griffin was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. Instead of facts, he provides only the conclusion that Warden Griffin knew of a substantial risk to his safety. The Court is not required to accept such a conclusion as true. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations"). Accordingly, the Court must dismiss plaintiff's claims against defendant Griffin.

### ii. Defendant Burch

Plaintiff alleges that defendant Burch was the functional unit manager at Potosi Correctional Center. (Docket No. 7 at 3). He states that Burch knew of a substantial risk to his safety following the October 3, 2016 incident in which plaintiff was allegedly assaulted by an unnamed inmate. (Docket No. 7 at 16). Plaintiff also asserts that on May 18, 2017, he was placed in "2B-Cell 5" following an administrative segregation hearing. According to plaintiff, defendant Burch told him he was being moved to "2B" because Burch did not like plaintiff's attitude. This move apparently placed plaintiff in proximity to inmate Teter.

These allegations do not demonstrate that Burch was "deliberately indifferent to a substantial risk of serious harm." *See Whitson*, 602 F.3d at 923. As with defendant Griffin, there is no allegation that Burch knew of any threat posed by inmate Teter. Plaintiff does not allege, for instance, that Teter had threatened him, or that there was bad blood between the two men, or that plaintiff had had an altercation with Teter in the past. To the contrary, as alleged, this appears to be a surprise assault. *See Patterson*, 902 F.3d at 851-52 (explaining that plaintiff's "own inability to anticipate the surprise attack," along with his failure to report an earlier

12

altercation with the attacking inmate, defeated liability).

Plaintiff does state that he was moved to a different cell due to his attitude. However, he does not allege any facts to support the inference that he was moved in order to place him closer to Teter. Certainly, plaintiff does not claim that Burch intentionally placed him in harm's way. The facts alleged by plaintiff simply do not warrant his conclusion that Burch knew of a substantial risk to his safety and refused to take any reasonable measures in response. Instead, his claims against Burch amount to nothing more than a legal conclusion, which is insufficient to state a claim. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) (stating that courts "are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level"). Accordingly, the Court must dismiss plaintiff's claims against defendant Burch.

### iii. Defendant Earls

Plaintiff alleges that defendant Earls was the Zone Director for Potosi Correctional Center. (Docket No. 7 at 3). Plaintiff's sole mention of Earls in the amended complaint occurs when he claims that Earls, along with Warden Griffin and Functional Unit Manager Burch, knew of a substantial risk to plaintiff's safety following his October 3, 2016 assault, and failed to address this with the Central Transfer Authority. (Docket No. 7 at 16). As with defendants Griffin and Burch, plaintiff fails to allege any facts supporting his deduction that Earls knew of a risk to his safety following the October assault. Plaintiff does not, for instance, allege that inmate Teter had threatened him, or that the two men were enemies. Further, he does not establish that the situation at Potosi warranted him being transferred following the October assault.

A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." *Lenz*, 490 F.3d at 995. Plaintiff has not alleged that

13

Burch knew of any such facts. Rather, his allegations against Burch amount to a legal conclusion, which the Court is not required to accept as true. *See Torti*, 868 F.3d at 671. Accordingly, the Court must dismiss plaintiff's claims against defendant Burch.

**iv.     Defendants Weaver, Brasser, and Klein**

Plaintiff alleges that defendants Weaver, Brasser, and Klein were correctional officers employed by Potosi Correctional Center. (Docket No. 7 at 3). He states that all three officers were present when he was allegedly assaulted by inmate Teter. (Docket No. 7 at 14). He claims that both Officer Weaver and Officer Brasser are liable due to a lack of awareness. (Docket No. 7 at 17). He does not specify why he believes that Officer Klein is liable, other than his mere presence.

These allegations are inadequate to show that Officers Weaver, Brasser, or Klein violated plaintiff's constitutional rights. Not every injury suffered by one prisoner at the hands of another prisoner translates into constitutional liability. *Whitson*, 602 F.3d at 923. Rather, a plaintiff must show that prison officials exhibited a deliberate or callous indifference to an inmate's safety. *Patterson*, 902 F.3d at 851. Plaintiff has not alleged that Weaver, Brasser, or Klein exhibited a deliberate or callous indifference to his safety. He does not allege that these defendants were aware that inmate Teter might attack him or that they failed to intervene when he did. He has not alleged anything, save for a conclusion that they were "responsible" because of a "lack of awareness." At most, he has alleged a claim of negligence, which does not constitute deliberate indifference. *Id*. at 852 (stating that guard's absence or inattentiveness during attack "represents – at most – gross negligence, which falls short of deliberate indifference as a matter of law"). Accordingly, plaintiff's claims against defendants Weaver, Brasser, and Klein must be dismissed.

### v. Defendant Beech

Plaintiff alleges that defendant Beech was a correctional officer at Potosi Correctional Center. (Docket No. 7 at 3). He states that Officer Beech was the officer escorting him to the shower when he was allegedly attacked. (Docket No. 7 at 16). He alleges that Officer Beech failed to take the proper measures in restraining inmate Teter. He specifically notes that Officer Beech did not use mace when inmate Teter assaulted him. (Docket No. 7 at 18).

These allegations do not state a failure to protect claim against Officer Beech. As with the other defendants, plaintiff has not alleged that Officer Beech knew that inmate Teter presented a threat to him. He does not, for example, allege that he told Officer Beech that inmate Teter might attack him, or that there had been any dispute between plaintiff and Teter, or that Officer Beech intentionally allowed the attack to take place. In short, he does not allege that Officer Beech exhibited a deliberate or callous indifference to his safety. *See Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002). Plaintiff does state that mace was not applied; however, he does not demonstrate why this amounts to deliberate indifference to his safety. As plaintiff himself admits, inmate Teter was subdued after a minor standoff, without the application of mace. Accordingly, plaintiff's claims against defendant Beech must be dismissed.

### vi. Defendant Lee

Plaintiff alleges that defendant Lee was a correctional officer at Potosi Correctional Center. (Docket No. 7 at 3). He claims that Officer Lee failed to abide by the necessary security measures. (Docket No. 7 at 16). According to plaintiff, at the time of the attack, Officer Lee was upstairs with two other officers taking a "special security order" inmate to the shower. (Docket No. 7 at 17). Plaintiff asserts that Officer Lee bent security measures in order to rush showers. He also states that Officer Lee knew that the bottom-walk shower used by inmate Teter had a

malfunction and could be popped open.

These allegations do not state a failure to protect claim against Officer Lee. His claim that Officer Lee failed to abide by the necessary security measures is a conclusion without factual supplementation. *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) (stating that a complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement"). At no point does he allege any facts tending to show that Officer Lee was aware of an excessive risk to plaintiff's safety. He does not assert that Officer Lee knew of any threat posed by inmate Teter towards plaintiff. Moreover, plaintiff does not state that he made Officer Lee aware of any concerns regarding inmate Teter. As such, he has not made a showing that Officer Lee was deliberately or callously indifferent to plaintiff's safety.

Plaintiff's claim that Officer Lee knew of the malfunctioning shower door does not change this result. Again, there is no indication by plaintiff that Officer Lee should have known that inmate Teter posed a danger to plaintiff. There is also no indication that Officer Lee planned for or allowed inmate Teter to escape from the shower. *See Irving*, 519 F.3d at 447 (noting that the defendants' actions in opening a cell door to allow one inmate to attack an another "portrays unjustifiable, actionable inmate-endangering conduct"). Instead, plaintiff frames his allegations in terms of negligence, stating that Officer Lee could have prevented the attack by remaining near inmate Teter, rather than escorting a different inmate to the shower. However, negligence, even gross negligence, does not rise to the level of deliberate indifference, which is required to prove a constitutional violation. *See Patterson*, 902 F.3d at 851 (stating that guard's absence or inattentiveness during attack "represents – at most – gross negligence, which falls short of deliberate indifference as a matter of law"); and *Tucker*, 276 F.3d at 1002 (stating that guard's "alleged conduct [in failing to notice the fatal beating of an inmate] certainly points to

negligence, and quite possibly even gross negligence, but that is insufficient to prove a violation of [plaintiff's] constitutional rights"). Accordingly, plaintiff's claims against defendant Lee must be dismissed.

### D. Plaintiff's Motions to Appoint Counsel

Plaintiff has filed two motions for appointment of counsel. (Docket No. 3; Docket No. 10). The Court will deny plaintiff's motions as moot, given the fact that plaintiff's claims are being dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motions to proceed in forma pauperis (Docket No. 2; Docket No. 8) are **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $4.00 within twenty-one (21) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's complaint is **DISMISSED** without prejudice for failure to state a claim and/or because it is legally frivolous. *See* 28 U.S.C. § 1915(e)(2)(B). A separate Order of Dismissal shall accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that plaintiff's motions for appointment of counsel (Docket No. 3; Docket No. 10) are **DENIED** as moot.

Dated this 16th of October, 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE